CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
RKe
JUN 16 2006
JOHN F. CORCORAN, CLERK
BY: H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RICHARD MOORE, ) | |
|     Plaintiff, ) | Civil Action No. 7:06cv00358 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CAMPBELL COUNTY ADULT ) | |
| DETENTION CENTER, ) | By: Hon. Jackson L. Kiser |
|     Defendant. ) | Senior United States District Judge |

Plaintiff Richard Moore, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Moore alleges that while housed at the Campbell County Adult Detention Center he was provided with inadequate medical care and exposed to a known health risk in violation of the Eighth Amendment.[1] Moore seeks a "reprimand" and $1,500,000.00 in damages. Upon review of the record, I conclude that the plaintiff has not stated a claim upon which relief can be granted and, therefore, dismiss the complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).[2]

I.

Moore alleges on or about June 4, 2004 while working outdoors, at the Campbell County

---

[1] The court notes that the Campbell County Adult Detention Center is not a "person" and therefore, is not a proper defendant in a §1983 action. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). However, even if the court granted Moore an opportunity to amend to name proper defendants, his claims would still fail for the reasons stated herein.

[2] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails state a claim upon which relief may be granted.

Dockets.Justia.com

Adult Detention Center ("Jail") he was bitten on his left foot by a brown recluse spider. Then, shortly thereafter, while cleaning a medical segregation cell which had previously housed an inmate with "mersa," his foot became red and a knot developed on top of the spider bite. The wound was tested by medical personnel and was positive for "mersa." Moore was immediately placed on antibiotics and was restricted to the inmate trustee housing area. However, because the swelling worsened he was taken to Rustburg Family Physicians ("Medical Center") for further treatment. There, Moore was examined by Dr. Thompson and was prescribed a second antibiotic and pain reliever. On his return to the jail, Moore was moved to the medical segregation unit, and was placed in the same cell which he had previously cleaned and in which he now asserts he contracted "mersa." Moore was schedule for a follow up appointment with Dr. Thompson a week later, but because he continued to complain of pain, he was reevaluated only three days later. During that exam, on or about June 7, 2004, Dr. Thompson lanced the knot on Moore's foot, but did not change the previously prescribed course of treatment, and Moore was then returned to the Jail. However, he alleges that his foot continued to swell, until it was approximately the size of a golf ball, and began to drain blood and puss. Two days later, on the afternoon of June 9, 2004, Moore was examined a third time by Dr. Thompson. At that time, Dr. Thompson determined that Moore's spider bite had become so infected that it needed to be surgically treated. Moore was immediately transferred to the hospital, underwent emergency surgery, and was placed on intravenous antibiotics. After the surgery Moore did not return to the Jail, but instead was released on furlough. Moore was subsequently treated for other, unrelated medical conditions, his sentence was commuted to time served, and he did not return to the Jail.

Moore alleges that the Jail was deliberately indifferent to his medical condition in that he was

not provided with adequate medical care, he was forced to clean a medical segregation cell which had previously housed an inmate with "mersa," the same infection he later contracted, once he became ill he was housed in that same medical segregation cell, and he was "indirectly denied pain medication" because there was no medical staff on duty at night to dispense "urgent care."

## II.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. Additionally, an inmate is not entitled to unqualified access to health care, rather the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

Although Moore complains that institutional staff failed to respond appropriately to his spider bite and infection and that medical staff were not on duty at night and, thus, could not provide "urgent care," he admits that as soon as he began to complain of pain and swelling he was examined by institutional staff and placed on an antibiotic, when his pain persisted he was transferred to an

3

outside facility for further treatment and was placed on a second antibiotic and pain reliever, three days later he was examined and treated a second time by an outside physician, and less than two days later, he was examined a third time by an outside physician, was transferred to the hospital for emergency surgery, and was placed on a third antibiotic. Accordingly, it is clear Moore received prompt treatment following his initial complaint that he had been bit by a spider and continued to receive immediate and extensive treatment when complications developed.

Further, although Moore complains that it took days to receive what he deemed proper treatment and months for his injury to fully heal, he has not alleged any facts which establish that this is attributable to any indifference on the part of institutional employees. In fact, he concedes that he was examined and treated numerous times in a period of mere days by institutional staff and outside physicians for this injury, as well as other, unrelated conditions. Accordingly, I find that his complaints regarding his treatment and care amount to nothing more than a disagreement between medical staff and an inmate as to proper diagnostic methods and a course of treatment, which are not actionable under the Eighth Amendment.

Likewise, although Moore's claims institutional employees were deliberately indifferent to a health risk in ordering him clean a cell which had previously housed an inmate with "mersa," housing him in the same cell once he contracted a "mersa" infection, and then in not replacing his sheets as often as he would like while he was housed in that cell, he has not presented any evidence which supports his claims. Moore does not allege that he was sick or had voiced any complaints regarding the spider bite when he was assigned to clean the medical segregation cell. Additionally, although he was later housed in the same medical segregation cell, he admits that prior to his transfer to that cell it was cleaned, he had been examined and treated by both institutional and outside

medical personnel for complications from the spider bite, and he had begun two courses of antibiotics. Finally, although Moore complains staff refused to change his sheets when they were soiled, he concedes this did not become a problem until after Dr. Thompson lanced his foot on or about June 7, 2004, and that on the afternoon of June 9, 2004 he was transferred to the hospital emergency room. Thus, at worst, his sheets were soiled for little over a day. Therefore, the court finds that at most, defendants were negligent as to the potential health threat posed by assigning inmates to clean cells in the medical segregation unit and in not immediately changing soiled sheets. See Estelle, 429 U.S. at 104 (stating that mere negligence in exposure to a health risk does not state a constitutional claim); see also; Rish, 131 F.3d at 1100 (finding that there is no established law which suggests that prison officials are deliberately indifferent to a substantial risk of harm by allowing or requiring orderlies to clean cells which may expose them to an infectious disease).

Finally, to the extent that Moore believes that the institutional physician or other medical staff have failed to recognize or treat his medical needs, such disagreement does not rise to the level of a federal constitutional violation. Rather, such a claim would arise, if at all, under state medical malpractice laws and does not present a colorable claim under § 1983. See Estelle, supra, at 105-106.

### III.

Based on the foregoing, I find that Moore has not presented any claims that constitute a violation of his constitutional rights. Therefore, I dismiss the complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the

Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants, if known.

**ENTER**: This 16th day of June, 2006.

Senior United States District Judge